UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 25-cv-22219

METZFAB INDUSTRIES, LLC AND
BRANDON METZGER,

    Plaintiffs,

v.

THE INDIVIDUALS, CORPORATIONS,
LIMITED LIABILITY COMPANIES,
PARTNERSHIPS, AND UNINCORPORATED
ASSOCIATIONS IDENTIFIED ON SCHEDULE
A,

    Defendants.
_____/

## COMPLAINT

Plaintiffs, METZFAB INDUSTRIES, LLC ("METZFAB") and BRANDON METZGER ("METZGER") (collectively "Plaintiffs"), hereby allege as follows against the individuals, corporations, limited liability companies, partnerships, and unincorporated associations and foreign entities identified on Schedule A[1] (collectively, "Defendants"):

## INTRODUCTION

1.    This is an action for patent infringement to combat e-commerce store operators who trade upon Plaintiffs' reputation and goodwill by making, using, offering for sale, selling, and/or importing into the United States for subsequent sale or use, unauthorized and unlicensed products that utilize the technology of and inventions claimed in Plaintiffs' patents, including U.S. Patent Nos. US 9,671,272 B1 and US 9,285,259 B1 (collectively, the "METZFAB Patents").

---

[1] Plaintiffs intend to file a Motion to Seal the Schedule A.

2. The METZFAB Patents are valid, subsisting, and in full force and effect. Plaintiff METZGER is the owner and lawful assignee of all right, title, and interest in and to the METZFAB Patents, which were duly and legally issued by the United States Patent and Trademark Office. True and correct copies of the METZFAB Patents are attached hereto as **Exhibit 1**.

3. Each of the Defendants directly and/or indirectly imports, develops, designs, manufactures, distributes, markets, offers to sell, and/or sells products infringing the METZFAB Patents (the "Infringing Products") in the United States, including in this Judicial District, and otherwise purposefully directs infringing activities to this district in connection with the Infringing Products. Defendants conduct this activity through their numerous fully interactive commercial Internet e-commerce stores operating under the online marketplace accounts and Seller IDs (collectively, the "Defendant Internet Stores"), including but not limited to Amazon.com ("Amazon").

4. The Defendant Internet Stores are designed to appear to be selling Plaintiffs' genuine METZFAB products (the "METZFAB Products"), while selling inferior imitations of such products that infringe one or more claims in Plaintiffs' patents.

5. The Defendant Internet Stores share unique identifiers, such as design elements and similarities of the Infringing Products offered for sale, establishing a logical relationship between them and suggesting that Defendants' illegal operations arise out of the same transaction, occurrence, or series of transactions or occurrences.

6. Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their illegal operation. Plaintiffs are forced to file this action to combat Defendants' infringement of the METZFAB Patents, as well as to protect unknowing consumers from purchasing Infringing Products over the Internet.

7. As a result of Defendants' actions, Plaintiffs have been and continue to be irreparably damaged from the loss of their lawful patent rights to exclude others from making, using, selling, offering for sale, and importing their patented technology, and, therefore, seek injunctive and monetary relief.

8. The harm and damages sustained by Plaintiffs have been directly and proximately caused by Defendants' wrongful use, advertisement, promotion, offers to sell, and sale of the Infringing Products.

## SUBJECT MATTER JURISDICTION

9. This Court has original subject matter jurisdiction over the patent infringement claim arising under the patent laws of the United States pursuant to 35 U.S.C. § 1 *et seq.*, §§ 271, 281, 282, 283, 284, 285, 28 U.S.C. § 1338(a), and 28 U.S.C. § 1331.

## PERSONAL JURISDICTION AND VENUE

10. Personal jurisdiction exists over Defendants in this Judicial District pursuant to Florida Statutes §§ 48.193(1)(a)(1)–(2) and 48.193(1)(a)(6), or in the alternative, Fed. R. Civ. P. 4(k) because, upon information and belief, Defendants regularly conduct, transact, and/or solicit business in Florida and in this Judicial District, and/or derive substantial revenue from business transactions in Florida and in this Judicial District, and/or otherwise avail themselves of the privileges and protections of the laws of the State of Florida such that this Court's assertion of jurisdiction over Defendants does not offend traditional notions of fair play and substantial justice, and/or Defendants' illegal counterfeiting and infringing actions caused injury to Plaintiff in Florida and in this Judicial District such that Defendants should reasonably expect such actions to have consequences in Florida and this Judicial District, for example:

    a. Upon information and belief, Defendants were and/or are systematically

directing and/or targeting their business activities at consumers in the United States, including those in Florida, in this Judicial District, through accounts with online marketplace platform Amazon.com (the "Marketplace Platform"). Defendants target consumers in the United States, including Florida (and more particularly, in this Judicial District), through this Marketplace Platform, in which consumers view one or more of the Defendant Internet Stores, and use to communicate with Defendants regarding their listings for Infringing Products and to place orders for, receive invoices for, and purchase Infringing Products for delivery in the United States, including Florida (and more particularly, in this Judicial District). Defendants use this platform as a means for establishing regular business with the United States, including Florida (and more particularly, in this Judicial District).

        b.     Upon information and belief, Defendants have transacted business with consumers located in the United States, including Florida (and more particularly, in this Judicial District), for the sale and shipment of Infringing Products.

11. To the extent defendants do not reside in the United States, venue is proper in this Court because, pursuant to 28 U.S.C. § 1391(c)(3), defendants who do not reside in the United States may be sued in any judicial district. Alternatively, venue is proper pursuant to 35 U.S.C. § 1400(b) because Defendants either reside or have committed acts of infringement and have a regular and established place of business in this district.

## **THE PLAINTIFFS**

12. Plaintiff METZFAB is a corporation incorporated under the laws of Arizona with its principal place of business located at 23012 N 15th Avenue, Phoenix, Arizona, 85027.

13. Plaintiff METZGER is an individual residing in Arizona. METZGER is the registered owner of the METZFAB Patents referred to above, and with the corresponding federal

registrations attached as Exhibit 1.

14. METZFAB is a highly experienced metal fabricator and metal products designer, specializing in providing CNC forming, CNC mandrel tube bending, deburring, CNC saw cutting, laser cutting, standard and 5-axis waterjet cutting, CNC machining, 3D CAD CAM design and assemblies, precision TIG, MIG, ARC welding and fixturing, general metal fabrication and design, precision sheet metal work, product manufacturing and assembly, stainless steel fabrication, 3D scanning arm laser welding, and welding robotic cell services to residential and commercial industries including, but not limited to, medical, automotive, military, aerospace, and oilfield clients. METZFAB is also a contract manufacturer, providing high-quality steel, aluminum and stainless steel, acrylic, glass, granite, and more components through the use of cutting-edge technology.

15. METZGER is the owner and founder of METZFAB.

16. Since starting its business in 2011, METZFAB has established itself as the premier metal fabrication company in Phoenix, Arizona.

## THE METZFAB PRODUCTS

17. METZFAB is the official source of METZFAB Products in the United States.

18. METZGER is the owner and lawful assignee of all rights, title, and interest in and to the METZFAB Patents (attached as Exhibit 1).

19. The METZFAB Products use the patented technology claimed in the METZFAB Patents.

## THE DEFENDANTS

20. Defendants are individuals and business entities who, upon information and belief, reside mainly in the People's Republic of China or other foreign jurisdictions. Defendants conduct

business throughout the United States including within Florida and in this Judicial District, through the operation of fully interactive commercial websites and online marketplaces operating under the Defendant Internet Stores and Seller IDs. Each Defendant targets the United States, including Florida, and has offered to sell and, on information and belief, has sold and continues to sell, products that infringe the METZFAB Patents to consumers within the United States, including Florida and in this Judicial District.

21.     Defendants are the past and present controlling forces behind the sale and offer for sale of the products that infringe METZFAB's intellectual property rights (as described herein), using the Seller IDs.

22.     Defendants directly compete with METZFAB by advertising, offering for sale, selling and importing goods that infringe the METZFAB Patents to consumers within the United States and this district through Internet based e-commerce stores using, at least, the Seller IDs and additional names or seller identification aliases not yet known to METZFAB. Defendants have purposefully directed some portion of their illegal activities towards consumers in the State of Florida through advertisements, offers to sell, sales, and/or shipment of infringing goods into the State.

23.     On information and belief, Defendants have anonymously registered and maintained some of the Seller IDs for the sole purpose of engaging in illegal infringing activities.

24.     On information and belief, Defendants will continue to register or acquire new seller identification aliases for the purpose of selling and offering for sale goods that infringe the METZFAB Patents unless preliminarily and permanently enjoined.

## THE DEFENDANTS' UNLAWFUL CONDUCT

25.     The success of the METZFAB Products has resulted in a significant number of

products that infringe the METZFAB Patents being sold in the market.

26. Plaintiffs have identified numerous domain names linked to fully interactive websites and marketplace listings on platforms such as Amazon.com, including the Defendant Internet Stores, which were offering for sale, selling, and importing Infringing Products to consumers in this Judicial District and throughout the United States.

27. Defendants have persisted in creating such online marketplaces and internet stores, like the Defendant Internet Stores. In fact, such online marketplaces and stores are estimated to receive tens of millions of visits per year and to generate over $135 billion in annual online sales. According to an intellectual property rights seizures statistics report issued by the United States Department of Homeland Security, the manufacturer's suggested retail price of goods seized by the U.S. government in fiscal year 2021 was over $3.3 billion. Internet websites like the Defendant Internet Stores are also estimated to contribute to tens of thousands of lost jobs for legitimate businesses and broader economic damages such as lost tax revenue every year.

28. On personal knowledge and belief, Defendants facilitate sales by designing the Defendant Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers selling genuine METZFAB Products.

29. Many of the Defendant Internet Stores look sophisticated and accept payment in U.S. dollars via credit cards, Western Union, and PayPal. Defendant Internet Stores often include images and design elements that make it very difficult for consumers to distinguish such counterfeit sites from an authorized website.

30. Defendants further perpetuate the illusion of legitimacy by offering "live 24/7" customer service and using indicia of authenticity and security that consumers have come to associate with authorized retailers, including the McAfee® Security, VeriSign®, Visa®,

MasterCard®, and PayPal® logos.

31. Plaintiffs have not licensed or authorized Defendants to use the METZFAB Patents, and none of the Defendants is an authorized retailer of genuine METZFAB Products.

32. Upon information and belief, Defendants use unauthorized search engine optimization ("SEO") tactics and social media spamming so that the Defendant Internet Stores listings show up at or near the top of relevant search results and misdirect consumers searching for genuine METZFAB Products. Further, Defendants utilize similar illegitimate SEO tactics to propel new domain names to the top of search results after others are shut down. As such, Plaintiffs also seek to disable Defendant Internet Stores owned by Defendants that are the means by which the Defendants could continue to sell Infringing Products into this District.

33. On information and belief, Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their massive network of Defendant Internet Stores.

34. For example, it is common practice for persons selling Infringing Products to register their domain names and/or User Accounts with incomplete information, randomly typed letters, or omitted cities or states.

35. And many Defendant Internet Stores use privacy services that conceal the owners' identity and contact information. On personal knowledge and belief, Defendants regularly create new websites and online marketplace accounts on various platforms using the identities listed in Schedule A, as well as other unknown fictitious names and addresses.

36. On personal knowledge and belief, even though Defendants operate under multiple fictitious names, there are numerous similarities among the Defendant Internet Stores. For example, some of the Defendant Internet Stores have virtually identical layouts, even though

different aliases were used to register the respective domain names.

37. In addition, the Infringing Products for sale in the Defendant Internet Stores bear similarities and indicia of being related to one another, suggesting that the Infringing Products were manufactured by and come from a common source and that, upon information and belief, Defendants are interrelated.

38. The Defendant Internet Stores also include other notable common features, including accepted payment methods, check-out methods, meta data, illegitimate SEO tactics, HTML user-defined variables, domain redirection, lack of contact information, identically or similarly priced items and volume sales discounts, similar hosting services, similar name servers, and the use of the same text and images.

39. In addition, Defendants in this case and defendants in other similar cases against online sellers of infringing products use a variety of other common tactics to evade enforcement efforts. For example, infringers like Defendants will often register new online marketplace accounts under User Accounts once they receive notice of a lawsuit.

40. Sellers of infringing products also often move website hosting to rogue servers located outside the United States once notice of a lawsuit is received. Rogue servers are notorious for ignoring take down demands sent by intellectual property owners.

41. Sellers of infringing products also typically ship products in small quantities via international mail to minimize detection by U.S. Customs and Border Protection. A 2012 U.S. Customs and Border Protection report on seizure statistics indicated that the Internet has fueled "explosive growth" in the number of small packages of counterfeit goods shipped through the mail and express carriers.

42. Further, sellers of infringing products such as Defendants typically operate multiple

credit card merchant accounts and PayPal accounts behind layers of payment gateways so that they can continue operation in spite of Plaintiffs' enforcement efforts.

43. On personal knowledge and belief, Defendants maintain off-shore bank accounts and regularly move funds from their PayPal accounts to off-shore bank accounts outside the jurisdiction of this Court. Indeed, analysis of PayPal transaction logs from previous similar cases indicates that offshore infringers regularly move funds from U.S.-based PayPal accounts to foreign-based bank accounts outside the jurisdiction of this Court.

44. Defendants, without any authorization or license from Plaintiffs, have knowingly and willfully used and continue to use the METZFAB Patents in connection with the advertisement, distribution, offering for sale, and sale of Infringing Products into the United States and Florida over the Internet.

45. For instance, two examples of Defendants' infringement of claims of the METZFAB Patents are described below:

| US Patent No. 9,671,272 Claim 1 | Defendant (DIYAREA) Offering ASIN[2]: B0CHJC86HG |
|---|---|
| An assembly comprising:<br><br>an oil pan having an inner surface, an outer surface, and a hole through the oil pan between the inner and outer surface;<br><br>a front fixture;<br><br>clamping means coupled to the front fixture;<br><br>a first fastener coupling the front fixture to the clamping means, the first fastener | |

---

[2] ASIN refers to "Amazon Standard Identification Number." It is a unique product identification number generated for all products listed for sale on the Amazon.com platform.

| | |
|---|---|
| fixed to the clamping means with a bond to prevent rotation of the clamping means with respect to the first fastener; and<br><br>a second fastener applied to the front fixture for application to the clamping means to move the clamping means toward and away from the front fixture;<br><br>the clamping means is moveable through the hole to arrange the assembly between a free condition, in which the clamping means is outside the oil pan, and an applied condition, in which the clamping means is inside the oil pan;<br><br>wherein in the applied condition of the assembly, the front fixture encircles the hole in direct contact against the outer surface of the oil pan and is sealed around the hole. |  |
| **US Patent No. 9,285,259**<br>**Claim 1** | **Defendant (Vvlsws) Offering ASIN: B0CWH26DMD** |
| An assembly comprising:<br><br>an oil pan having an inner surface, an outer surface, and a hole through the oil pan between the inner and outer surface;<br><br>a front fixture larger than the hole;<br><br>clamping means coupled to the front fixture, the clamping means having a length which is larger than the hole and a width, transverse to the length, which is a smaller than the hole; and<br><br>the clamping means is moveable through the hole to arrange the assembly between a free condition, in which the clamping means is outside the oil pan, and an |  |

11

applied condition, in which the clamping means is inside the oil pan;

wherein in the applied condition of the assembly, the front fixture encircles the hole in direct contact against the outer surface of the oil pan and is sealed around the hole.



46. Each Defendant Internet Store offers shipping to the United States, including Florida (in this Judicial District) and, on information and belief, each Defendant has offered to sell products infringing the METZFAB Patents into the United States, including Florida (in this Judicial District), which is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiffs.

47. Defendants are promoting, offering for sale, selling and importing into the United States Infringing Products that directly infringe the METZFAB Patents through at least the Internet e-commerce stores operating under the Defendant Internet Stores and Seller IDs.

48. Defendants' infringing activities are done without Plaintiffs' consent or

authorization.

49. Defendants' infringing activities described herein have caused and continue to cause significant harm to Plaintiffs including lost sales, price erosion, lost market share and a significant negative impact on METZFAB's goodwill.

50. Plaintiffs have no adequate remedy at law.

51. Plaintiffs are suffering irreparable injury and have suffered substantial damages as a result of Defendants' unauthorized and wrongful use of the technology of and inventions claimed in one or more claims of the METZFAB Patents. If Defendants' infringement is not preliminarily and permanently enjoined by this Court, Plaintiffs will continue to be harmed.

## FIRST CAUSE OF ACTION
## UTILITY PATENT INFRINGEMENT (35 U.S.C. § 271)

52. Plaintiffs repeat and incorporate by reference herein the allegations contained in Paragraphs 1–53 of this Complaint.

53. Defendants are manufacturing, distributing, offering for sale, selling, and/or importing into the United States, unauthorized products that directly or indirectly infringe the METZFAB Patents both literally and under the doctrine of equivalents.

54. Defendants have infringed the METZFAB Patents through the aforesaid acts and will continue to do so unless enjoined by this Court. Defendants' wrongful conduct has caused Plaintiffs to suffer irreparable harm resulting from the loss of their lawful patent rights to exclude others from manufacturing, distributing, selling, offering for sale, and/or importing the patented inventions as well as the loss of sales stemming from the infringing acts. Plaintiffs are entitled to injunctive relief pursuant to 35 U.S.C. § 283. Unless a preliminary and permanent injunction is issued enjoining Defendants and all others acting in concert therewith from infringing the METZFAB Patents, Plaintiffs will continue to be irreparably harmed.

55. Defendants' infringement of the METZFAB Patents in connection with the Infringing Products has been and continues to be willful.

56. Based on Defendants' wrongful conduct, Plaintiffs are entitled to injunctive relief as well as monetary damages and other remedies as provided by the Patent Act, including recovering damages adequate to compensate for the infringement and any other damages as appropriate pursuant to 35 U.S.C. § 284.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment on all Counts of this Complaint and an award of equitable and monetary relief against Defendants as follows:

a) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

  i. manufacturing, importing, advertising, promoting, offering to sell, selling, distributing, or transferring any products not authorized by Plaintiffs and that infringe one or more claims in the METZFAB Patents;

  ii. committing any acts calculated to cause consumers to believe that Defendants' Infringing Products are those sold under the authorization, control, or supervision of Plaintiffs, or are sponsored by, approved by, or otherwise connected with Plaintiffs;

  iii. further infringing the METZFAB Patents and damaging METZFAB's goodwill;

  iv. aiding, abetting, contributing to, or otherwise assisting anyone in infringing upon the METZFAB Patents;

    v. shipping, delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiffs, nor authorized by Plaintiffs to be sold or offered for sale, and which infringe the METZFAB Patents;

    vi. using, linking to, transferring, selling, exercising control over, or otherwise owning any online marketplace accounts, the Defendant Internet Stores, or any other domain name or online marketplace account that is being used to sell or is the means by which Defendants could continue to sell Infringing Products; and

    vii. operating and/or hosting online marketplace accounts at the Defendant Internet Stores that are involved with the distribution, marketing, advertising, offering for sale, or sale of any product using the technology or inventions claimed in the METZFAB Patents that is not a genuine METZFAB Product or not authorized by Plaintiffs to be sold in connection with the METZFAB Patents.

  b) Entry of an Order that Amazon:

    i. disable and cease providing services for any accounts through which Defendants engage in the sale of Infringing Products, including any accounts associated with the Defendants listed on Schedule A;

    ii. disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of Infringing Products; and

  c) take all steps necessary to prevent links to the Defendant Internet Stores identified on Schedule A from displaying in search results, including, but not limited to, removing links to the Defendant Internet Stores from any search index.

   d) That Plaintiffs be awarded such damages as they shall prove at trial against Defendants that are adequate to compensate Plaintiffs for Defendants' infringement of the METZFAB Patents, but in no event less than a reasonable royalty for the use made of the invention by the Defendants, together with interest and costs, pursuant to 35 U.S.C. § 284.

   e) That the amount of damages awarded to Plaintiffs to compensate Plaintiffs for infringement of the METZFAB Patents be increased by three times the amount thereof, as provided by 35 U.S.C. § 284;

   f) That Plaintiffs be awarded their reasonable attorneys' fees and costs; and

   g) Award any and all other relief that this Court deems just and proper.

Dated: May 14, 2025        Respectfully submitted,

                **BOIES SCHILLER FLEXNER LLP**

                */s/ Leigh Salomon*
                Leigh Salomon (FL Bar No. 1054106)
                100 SE 2nd Street Suite 2800
                Miami, Florida 33131
                Tel: (305) 357-8450
                lsalomon@bsfllp.com

                *Attorney for Plaintiffs Metzfab Industries, LLC and Brandon Metzger*